IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TRANSWORLD FOOD SERVICE, LLC a/k/a
TRANSWORLD FOODS and EMILIA FOODS,
LLC,

     Plaintiffs,

              v.

NATIONWIDE MUTUAL INSURANCE
COMPANY,

     Defendant.

Civil Action No.
1:19-cv-03772-SDG

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss and Strike

First Amended Complaint and for Partial Dismissal of the Initial Complaint

[ECF 27] and Plaintiffs' motion to amend the complaint [ECF 30]. For the reasons

stated below, the Court **DENIES** Defendant's motion and **GRANTS** Plaintiffs'

motion.

I.    **Facts**

The following facts are accepted as true for purposes of these motions.[1]

Plaintiff TransWorld Food Service, LLC a/k/a TransWorld Foods (TransWorld) is

---

[1]   *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 (11th Cir. 1999) ("At the motion
to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable
inferences therefrom are construed in the light most favorable to the
plaintiff.").

a wholesale food distributor with its principal place of business in DeKalb County, Georgia.[2] Defendant Nationwide Mutual Insurance Company (Nationwide) is incorporated in and has its principal place of business in Ohio.[3]

TransWorld owns property in Atlanta, Georgia where it has its business offices; a commercial warehouse; and cooler and freezer space, including a walk-in commercial freezer (the Property).[4] Between 2015 and 2018, TransWorld entered into three insurance policies (the Policies) with Nationwide covering the Property.[5] Nationwide also provided an insurance policy for TransWorld's business automobiles  (the Auto Policy).[6] In August 2015, TransWorld purchased the assets of a fresh seafood supply company, Emilia Foods, LLC (Emilia).[7]

In 2015, TransWorld hired Dickerson HVAC Services (Dickerson) to install insulated wall panels for its walk-in freezer and commercial coolers on the Property.[8] Dickerson and its subcontractor negligently installed an improper

---

[2]   ECF 1-1, ¶ 1–2. TransWorld is a limited liability company whose members, Teri Blevins and Mario Moceri, are citizens of Georgia. ECF 1, ¶ 3.

[3]   ECF 1, ¶ 4.

[4]   ECF 1-1, ¶ 2.

[5]   *Id.* ¶ 5.

[6]   *Id.* ¶ 6.

[7]   *Id.* ¶ 8.

[8]   *Id.* ¶ 10.

grade of refrigerant, leading to physical damage of the refrigeration system.[9] As a result of this negligent installation, TransWorld sustained damages under its 2015–16 insurance policy with Nationwide (the 2015 Loss).[10] TransWorld filed a claim with Nationwide that was denied on February 8, 2018.[11] After issuing the denial, Nationwide continued to investigate and negotiate the 2015 Loss with TransWorld by, *inter alia*, questioning TransWorld about the loss in an examination under oath of TransWorld representative Teri Blevins.[12]

On January 17, 2016, a backflow preventer in the fire-water main servicing the Property failed (the 2016 Loss), resulting in massive amounts of water breaching the Property.[13] TransWorld filed a Claim with Nationwide for damages from the 2016 Loss under the 2015–16 policy.[14] Nationwide accepted coverage of the 2016 Claim and made partial payments to TransWorld for the loss.[15] After

---

[9]  *Id.* ¶ 11–14.

[10]  *Id.* ¶ 17.

[11]  *Id.* ¶ 18–19.

[12]  *Id.* ¶ 19.

[13]  *Id.* ¶ 22.

[14]  *Id.* ¶ 25–26.

[15]  *Id.* ¶ 27.

making partial payments, Nationwide continued to investigate and negotiate the 2016 Claim but failed to make full payment for the loss.[16]

The 2016 Loss also resulted in damage to TransWorld's business automobiles covered under the Auto Policy (the 2016 Auto Loss).[17] Nationwide accepted the 2016 Auto Loss as a covered claim,[18] and made partial payments on the loss but never paid the full amount of damages.[19] After making partial payments, Nationwide continued to investigate and negotiate the claim.[20]

In 2017, TransWorld's landlord retained a contractor to perform repairs on the roof of the Property.[21] On July 10, 2017, the landlord informed TransWorld that the roofer had negligently cut the Freon supply line to the walk-in freezer, causing damage to the freezer and spoiling all of "the business personal property" stored in the freezer (the 2017 Loss).[22] As a result, TransWorld sustained damages under

---

[16]  *Id.* ¶ 28.

[17]  *Id.* ¶ 31.

[18]  *Id.* ¶ 34.

[19]  *Id.* ¶ 35.

[20]  *Id.*

[21]  *Id.* ¶ 38.

[22]  *Id.* ¶¶ 38–41.

the 2016–17 policy.[23] The insurance carrier for the roofer provided partial payment for the damage.[24] TransWorld filed a claim with Nationwide for the uncompensated damage.[25] Nationwide continually investigated and negotiated the 2017 Loss with TransWorld until sometime in 2019, but failed to make payment.[26]

On July 22, 2018, a substantial water leak occurred from a plumbing line servicing the second-story unit occupied by TransWorld's landlord's adjacent property.[27] The leak entered the walk-in freezer and caused damage to the "business personal property" stored in the freezer (the 2018 Loss).[28] As a result, TransWorld sustained damages under the 2017–18 policy.[29] TransWorld filed a claim for the loss with Nationwide.[30] Nationwide failed to make payment for the loss.[31]

---

[23] *Id.* ¶ 43.

[24] *Id.* ¶ 44.

[25] *Id.* ¶ 45.

[26] *Id.* ¶¶ 46–47.

[27] *Id.* ¶ 49.

[28] *Id.* ¶ 50.

[29] *Id.* ¶ 51.

[30] *Id.* ¶ 53.

[31] *Id.* ¶ 54.

On May 21, 2019, TransWorld sent a demand to Nationwide for payment of the 2015 through 2018 losses.[32] Nationwide failed to make payment within sixty days of the demand.[33]

## II.    Procedural History

TransWorld filed this action on July 22, 2019 in the Superior Court of DeKalb County, Georgia.[34] The Complaint alleges breach of insurance contracts and bad faith claims against Nationwide.[35] Nationwide removed the case on August 21, 2019.[36] The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.[37]

On October 24, 2019, TransWorld filed the First Amended Complaint (FAC).[38] The FAC contains identical allegations to the initial Complaint except it adds Emilia as a plaintiff.[39] On November 7, Nationwide filed its motion to strike

---

[32]  *Id.* ¶ 20, 29, 36, 47, 55.

[33]  *Id.* ¶ 21, 30, 37, 48, 56.

[34]  ECF 1-1.

[35]  *Id.* The Complaint also includes a count for the recovery of interest. *Id.* at 17.

[36]  ECF 1.

[37]  *Id.* ¶¶ 3–7.

[38]  ECF 22.

[39]  Emilia is a Georgia limited liability company with its principal place of business in DeKalb County, Georgia. *Id.* ¶ 3. Its sole member is TransWorld. ECF 71. Therefore, like TransWorld, Emilia is domiciled in Georgia for

the FAC and dismiss part of the original Complaint.[40] On November 15, Plaintiffs filed their response to Nationwide's motion,[41] and an alternative motion for leave to file a Second Amended Complaint (SAC).[42] Nationwide opposes Plaintiffs' motion for leave.[43]

## III.    Legal Standard

### a.    Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this standard does not require "detailed factual allegations," the Supreme Court has held that "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual

---

purposes of diversity jurisdiction and its addition as a party plaintiff does not affect the Court's subject matter jurisdiction.

[40]    ECF 27.

[41]    ECF 29.

[42]    ECF 30.

[43]    ECF 36.

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F. 3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). A complaint is plausible on its face when a plaintiff pleads sufficient factual content for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Am. Dental Ass'n*, 605 F.3d at 1289 (citing *Twombly*, 550 U.S. at 556). "A complaint does not state a facially plausible claim for relief if it shows only a sheer possibility that the defendant acted unlawfully." *Waters Edge Living, LLC v. RSUI Indem. Co.*, 355 F. App'x 318, 322 (11th Cir. 2009). A complaint must also present sufficient facts to "'raise a reasonable expectation that discovery will reveal evidence' of the claim." *Am. Dental Ass'n*, 605 F.3d at 1289 (quoting *Twombly*, 550 U.S. at 556).

At the motion to dismiss stage, "'all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.'" *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). This principle, however, does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678.

**b.    Motion to Amend**

Pursuant to Fed. R. Civ. P. 15(a), a party may amend its complaint only by leave of court or with written consent of the adverse party when it has been more

than 21 days following service of the responsive pleading or motion. "Rule 15(a)
gives district courts 'extensive discretion' to decide whether or not to allow a party
to amend a complaint." *Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir.
1999) (quoting *Hargett v. Valley Fed. Sav. Bank,* 60 F.3d 754, 761 (11th Cir. 1995)).
However, the rule cautions that courts "should freely give leave when justice so
requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court has held that:

> In the absence of any apparent or declared reason—such
> as undue delay, bad faith or dilatory motive on the part
> of the movant, repeated failure to cure deficiencies by
> amendments previously allowed, undue prejudice to the
> opposing party by virtue of allowance of the
> amendment, futility of amendment, etc.—the leave
> sought should, as the rules require, be 'freely given.'

*Foman v. Davis*, 371 U.S. 178, 182 (1962). "[D]enial of leave to amend is justified by
futility when the complaint as amended is still subject to dismissal." *Hall v. United
Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004) (quoting *Burger King Corp. v.
Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999)).

## IV.   Motion to Dismiss and Strike the FAC

In support of its argument that the Court should dismiss and strike the FAC,
Nationwide contends that the pleading, which adds Emilia as a party, was
improperly filed without leave of Court to amend as required by Fed. R. Civ. P. 15

and 21.[44] In response, Plaintiffs note that the FAC is identical to the initial Complaint with the exception of the addition of Emilia.[45] Plaintiffs allege that Nationwide consented to adding Emilia to the Complaint during the Rule 26(f) conference and this understanding was memorialized in the parties' Joint Preliminary Report and Discovery Plan (the Joint Report).[46] Plaintiffs also assert that the Joint Report allowed for amendments to the pleadings for a period of thirty days after its filing.[47] Finally, Plaintiffs argue that the Court can alternatively treat the FAC as a motion to amend the Complaint and grant the motion.[48]

---

[44]   ECF 27, at 4.

[45]   ECF 29, at 16 ("The counts in the Initial Complaint and the FAC are identical, except for the addition of Plaintiff Emilia.").

[46]   *Id.* at 1–2. The Joint Report states, "[t]he parties anticipate Plaintiff's filing an amended complaint adding Emilia Foods, LLC as a party plaintiff. The parties reserve the right to amend the pleadings in accordance with Fed. R. Civ. P. 15." ECF 29-2, at 2.

[47]   ECF 29, at 3. The Joint Report states, "Amendments to the pleadings submitted LATER THAN THIRTY DAYS after the [Joint Report] is filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law." ECF 3 (Joint Report), ¶ 6(b). Plaintiffs contend this language is taken verbatim from the Court's form for joint reports in the Local Rules. ECF 29, at 3 (citing LR, NDGa, Appendix B). Therefore, Plaintiffs argue that the Local Rules permit parties to file amended pleadings within 30 days of the filing of the joint report. Accordingly, it argues that the FAC was timely as the Joint Report was filed on September 27, 2019 and the FAC was filed on October 24, 2019. *Id.* at 3–4.

[48]   *Id.* at 4–5.

In its reply brief, Nationwide claims that it did not consent to TransWorld's addition of Emilia as a plaintiff during the Rule 26(f) conference, nor does the language in the Joint Report constitute written consent to this amendment as required by Fed. R. Civ. P. 15(a)(2).[49] Further, it claims that, should the Court treat the FAC as a motion to amend, it should deny the motion because TransWorld unduly delayed its amendment.[50]

The arguments provided by both parties show the following: The FAC is identical to the initial Complaint with the exception of the addition of Emilia as a plaintiff. It was filed at the very beginning of discovery and within the 30-day period for the amendment of pleadings provided for in the Joint Report. Thus, any delay in adding Emilia was minimal. Further, Nationwide cannot claim that it was surprised by the amendment because, even if it did not consent to the addition of this party during the Rule 26(f) conference or through the Joint Report, it is undisputed that the parties discussed adding Emilia during the conference.[51]

---

[49]   ECF 35, at 2–5.

[50]   *Id.* at 6. Nationwide also raises a futility argument in opposition to treating the FAC as a motion to amend. This is the same argument raised in its motion to dismiss specific counts of the initial Complaint and its response opposing Plaintiffs' motion to file a SAC. As such, the Court addresses this argument in Section V.a. *infra.*

[51]   ECF 35, at 3 ("Nationwide's lead counsel states in his place that he did not request that Transworld file an amended complaint, but rather, asked during

Significantly, Nationwide's Initial Disclosures state that it "believes that Emilia Foods, LLC is a necessary party-plaintiff."[52] Therefore, Nationwide is not prejudiced by the addition of this party and its arguments are not well-taken in light of these facts.

The Court has extensive discretion in deciding whether to grant a motion to amend. This Court may treat the filing of an amended complaint without leave as a motion for leave to file an amended complaint. *Hawk v. Bank of Am., N.A.*, No. 1:14-CV-03517-ELR, 2015 WL 11718111, at *1 (N.D. Ga. Feb. 25, 2015) ("Although Plaintiff does not request leave to file his Amended Complaint, the Court will construe the filing of the Amended Complaint as a motion for leave to file."). Further, under Fed. R. Civ. P. 21, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Applying these principles to the facts here, the Court finds that the filing of the FAC should be treated as a motion for leave to amend the complaint to add Emilia as a plaintiff pursuant to Rule 21 and grants that motion. Accordingly, Nationwide's motion to dismiss and strike the FAC and drop Emilia as a party is **DENIED**.

---

the Rule 26(f) conference whether Emilia Foods intended to join the action.").

[52]   ECF 29-2, at 2.

## V.      Motion to Dismiss Specific Counts and Motion to Amend

Nationwide's motion also seeks to dismiss Counts I–IV, VII, and XIII,[53] as well as Counts IX and X to the extent they are asserted by Emilia.[54] Nationwide does not specifically state the basis for dismissing these counts; however, it appears to be asserting they must be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[55]

Nationwide alleges, and Plaintiffs do not dispute, that the insurance policies at issue for the 2015 Loss, 2016 Loss, 2017 Loss, and 2018 Loss contain a one-year suit-limitation period commencing on the date on which the loss occurred.[56] Further, Nationwide asserts that the 2015 through 2017 losses were sustained more than a year prior to the filing of the initial Complaint and the 2018 Loss was

---

[53]   The initial Complaint and FAC mistakenly label the Eighth Count as "XIII."

[54]   ECF 27, at 6–7.

[55]   ECF 29, at 6 n.3 (citing ECF 27 at 4 n.1).

The Court notes that Nationwide's motion requests dismissal of these counts from the initial Complaint, presumably on the theory that the motion to dismiss or strike the FAC would be granted. Since the Court denied that motion and the FAC raises identical counts, it will treat Nationwide's motion to dismiss the specific counts of Plaintiffs' initial pleading as seeking to dismiss those counts from the FAC.

[56]   ECF 27, at 7.

sustained more than a year prior to Emilia being added as a party.[57]

In response, Plaintiffs argue that insurance companies can waive suit-limitation provisions in their policies and the allegations of the FAC are sufficient to make out a plausible claim of waiver.[58] Plaintiffs also assert that Emilia is not barred from asserting a claim based on the 2018 Loss because, when a complaint is amended to add a party, it relates back to the initial filing of the action.[59] Alternatively, in the event the Court finds that the FAC does not sufficiently allege waiver, Plaintiffs move to file an amended complaint to provide further specificity and clarification as to that issue.[60] Nationwide opposes this motion, claiming that Plaintiffs unduly delayed the filing of the SAC, and the claims are otherwise futile.[61]

### a.    Counts IX and X and Relation Back

Before turning to the issue of waiver, the Court addresses Nationwide's claims that Emilia is barred from bringing Counts IX and X related to the 2018 Loss because it was added as a party after the suit-limitation period for that loss had

---

[57]   *Id.*

[58]   ECF 29, at 8–10.

[59]   *Id.* at 15–16.

[60]   ECF 30, at 9 n.3.

[61]   ECF 36, at 7.

expired. Among other things, Fed. R. Civ. P. 15(c)(1)(C) governs when an amendment to a pleading that changes the party *against* whom a claim is asserted relates back to the date of the original pleading.[62] While the rule does not expressly contemplate an amendment that adds or changes a party *asserting* a claim, the Eleventh Circuit has applied it in such contexts. *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1131–32 (11th Cir. 2004) (finding that other circuit courts have applied the rule in this context and that the legislative history of the rule supports such an application). For an amendment to relate back under Rule 15(c)(1)(C) it must assert a claim that arose out of the conduct, transaction, or occurrence set out in the original pleading. Additionally, when considering whether to allow relation back of an amendment that adds a new party plaintiff, the Court must consider whether (1) the addition will unduly prejudice the defendant, and (2) whether the original complaint provided adequate notice of the claims asserted. *Willoughby v.*

---

[62] Plaintiffs claim that whether the FAC relates back is governed by Fed. R. Civ. P. 15(c)(1)(B). ECF 29, at 16. However, "when an amendment seeks to change a party against whom a claim is asserted, as opposed to changing merely the allegations set forth in the pleading, the relation back rule is more stringent" and Fed. R. Civ. P. 15(c)(1)(C)—which incorporates the requirements of subsection (B)—applies. *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1131 (11th Cir. 2004).

*Youth Villages, Inc.*, No. 1:13-CV-03910-SCJ, 2014 WL 12543921, at *4 (N.D. Ga. Oct. 10, 2014).

The Court finds that these requirements are met here. First, as the claims in the FAC are identical to those of the initial Complaint, it necessarily follows that the proposed amendment asserts claims that arose out of the same transaction or occurrence. Second, given that Nationwide asked whether Emilia would be joining the action and asserted in its Initial Disclosures that Emilia was a necessary party, the addition of Emilia will not result in undue prejudice to Nationwide; Nationwide had notice that Emilia might join in these claims.

For the foregoing reasons, the Court **DENIES** Nationwide's motion to dismiss Counts IX and X as asserted by Emilia.

### a.   Counts I–IV, VII, and XIII and Waiver

#### i.   Legal Standard

The parties agree that Georgia law controls the insurance contract. In Georgia, suit-limitation provisions are valid and enforceable. *Giles v. Nationwide Mut. Fire Ins. Co.*, 199 Ga. App. 483, 485 (1991). However, "[a]n insurance company may waive the contractual-limitation provision when the company 'leads the insured by its actions to rely on its promise to pay, express or implied.'" *Premier Eye Assocs., P.C. v. Mag Mut. Ins. Co.*, No. A20A0373, 2020 WL 3025528, at *5

(Ga. Ct. App. June 5, 2020) (quoting *Willis v. Allstate Ins. Co.*, 334 Ga. App. 540, 543

(2015)).

> Indeed, if the insurer never denied liability, but "continually discussed the loss with its insured with a view toward negotiation and settlement without the intervention of a suit, whether or not this lulled the insured into a belief that the [time-limitation] clause in the contract was waived by the insurer can become a disputed question of fact for the jury."

*Premier Eye Assocs.*, 2020 WL 3025528, at *5 (quoting *Willis*, 334 Ga. App. at 543)

(alteration in original) (additional citation omitted). "If the insurer makes direct

promises to pay or if settlement negotiations have lead [sic] the insured to believe

that the claim will be paid without litigation, the time requirement is waived."

*Giles*, 199 Ga. App. at 485. However, investigation and negotiation of the claim

alone is not sufficient to constitute waiver. O.C.G.A. § 33-24-40; *see also Premier Eye*

*Assocs.*, 2020 WL 3025528 at *5 ("[M]ere negotiation for settlement, unsuccessfully

accomplished, is 'not that type of conduct designed to lull the claimant into a false

sense of security so as to constitute a waiver of the limitation defense.'") (quoting

*Stone Mountain Collision Ctr. v. Gen. Cas. Co. of Wis.*, 307 Ga. App. 394, 396 (2010)).

### ii. The SAC

Before addressing the motion to dismiss these counts, the Court must decide

whether the FAC or the SAC is the operative complaint in the proceeding because

the SAC includes additional allegations regarding waiver applicable to the analysis.[63] Nationwide opposes Plaintiffs' motion to amend the FAC based on undue delay and futility. The Court addresses each in turn.

### (1)   Delay

Nationwide's claim of undue delay is unavailing. Plaintiffs moved to file the SAC the same day it filed its timely response to Nationwide's motion to dismiss. While TransWorld had already amended the Complaint, the only difference between the initial Complaint and the FAC was the addition of Emilia as a plaintiff and the FAC was filed prior to Nationwide raising the suit-limitation defense. Thus, Plaintiffs promptly moved to amend as soon as they were aware that Nationwide intended to assert this defense. Furthermore, while the SAC provides more specificity to the allegations of waiver, the causes of action in the original

---

[63] Plaintiffs assert that suit limitation is an affirmative defense and, therefore, a plaintiff need not assert compliance in order to survive a motion to dismiss. ECF 29, at 7. Nationwide failed to respond to this argument and Georgia caselaw is not clear on this point. Some cases state that the limitation is a condition precedent, suggesting that the plaintiff may need to plead compliance. *Long v. State Farm Fire*, 272 F. Supp. 3d 1344, 1347 n.2 (M.D. Ga. 2017) (noting this dichotomy and collecting Georgia state cases referring to the limitation as a condition precedent). For purposes of this motion, the Court need not decide the issue because it finds that Plaintiffs should be granted leave to amend the FAC and, even if the limitation is a condition precedent, the allegations of the SAC sufficiently allege waiver.

Complaint, the FAC, and the SAC are the same and arise out of the same events. As such, Nationwide's argument that it will be prejudiced because it has already tailored its discovery requests to the claims of the initial Complaint carries little weight. Accordingly, the Court finds that there was not undue delay in Plaintiffs seeking leave to amend.

### (2) Futility

Nationwide also claims that the amendment would be futile. "An amendment is futile if the complaint would be subject to dismissal as amended." *Long v. State Farm Fire*, 272 F. Supp. 3d 1344, 1348 (M.D. Ga. 2017) (citing *Hall*, 367 F.3d at 1263). Therefore, for purposes of deciding whether the motion to amend should be denied based on futility, the Court must consider whether the causes of action, as alleged in the SAC, are subject to dismissal. *See id.* at 1348 ("Because the Longs' proposed amended complaint contains allegations central to their current waiver argument and State Farm's sole argument for denying the motion to amend is futility, the Court need not consider whether the initial complaint would survive a motion to dismiss and instead addresses the proposed amended complaint."). Specifically, the Court must decide whether the SAC has adequately alleged waiver of the suit limitation provisions.

Pertinent to waiver, the SAC alleges that Nationwide denied the 2015 Loss claim on February 8, 2018.[64] The denial did not reference the suit-limitation provision, which would have already run by that date.[65] Furthermore, Nationwide continued to investigate and negotiate the claim, including by obtaining Blevins's examination under oath on January 8, 2019.[66]

With regard to the 2016 Loss, the SAC alleges that Nationwide continued to make partial payments on that claim beyond the suit-limitation date, including, but not limited to, payments made in July 2018.[67] It alleges that Nationwide never indicated that any portion of the 2016 claim was not covered and continued to investigate and negotiate the 2016 Loss as shown through the Blevins examination and Nationwide's requests for financial documents.[68]

For the 2017 Loss, the SAC alleges that Nationwide accepted coverage and made partial payments on the claim.[69] Furthermore, the pleading asserts that, after making partial payment for the damage to the walk-in freezer, Nationwide

---

[64]   ECF 30-1, ¶ 19.

[65]   *Id.*

[66]   *Id.* ¶¶ 19–20.

[67]   *Id.* ¶ 31.

[68]   *Id.* ¶ 32.

[69]   *Id.* ¶ 52.

continued to investigate and negotiate the claim by requesting financial documents and taking Blevins's examination.[70] The SAC alleges that Nationwide never indicated that any specific portion of the claim was not covered.[71]

For the 2015 through 2017 loss claims, the SAC pleads that the continuous investigation and negotiation of the claims led Plaintiffs to believe that Nationwide would make payment for the 2015 through 2017 losses without the need of a lawsuit and that the suit-limitation provision would not apply.[72] Additionally, Plaintiffs allege that Nationwide offered to mediate the claims and scheduled a mediation for August 7, 2019 but cancelled on August 5, 2019.[73]

Based on the allegations in the SAC, Plaintiffs have plausibly pleaded that Nationwide lulled them into believing that the suit-limitation provision had been waived. The allegations show that Nationwide accepted coverage and partially paid some of the claims, conducted examinations after the limitation period, and

---

[70]   *Id.* ¶ 53.

[71]   *Id.*

[72]   *Id.* ¶¶ 21, 33, 54.

[73]   *Id.* ¶¶ 23, 35, 56, 67.

attempted to mediate the parties' disputes as late as August 2019.[74] Thus, the SAC is not futile as it is plausible as alleged that Nationwide's actions went beyond mere negotiation and investigation and, thereby, waived the suit limitation. *See Am. Dental Ass'n,* 605 F.3d at 1289 (discussing the plausibility standard applied to motions to dismiss).

As such, the Court does not find at this stage of the litigation that Plaintiffs' claims are barred. *Impac Funding Corp. v. Amica Mut. Ins. Co.*, No. 1:12-CV-873-RWS, 2013 WL 1136860, at *3 (N.D. Ga. Mar. 18, 2013) (finding that, at the motion to dismiss stage, the Court could not rule as a matter of law that the claims were barred by the suit-limitation provision because factual questions remained and more discovery was necessary on the issue of waiver). The Court's conclusion is further supported by the case law on which the parties rely—almost all of which

---

[74] Nationwide argues that actions after the expiration of the limitation period, such as Blevins's examination, cannot support a finding of waiver. ECF 35, at 11–12. However, the facts as pleaded support a reasonable inference that the parties engaged in negotiations during and after the limitation period and the Blevins examination is only one source of evidence regarding these negotiations. For the first time in its reply brief, Nationwide asserts that TransWorld did not provide notice of the 2015 Loss until after the limitation period and the Blevins examination was delayed by TransWorld. *Id.* at 11 n.1, 12 n.2. However, arguments raised for the first time in a reply brief will not be considered. *Reliance Ins. Co. of Illinois v. Richfield Hosp. Servs., Inc.*, 92 F. Supp. 2d 1329, 1332 (N.D. Ga. 2000). That is especially true here, where the argument was without citation and buried in footnotes.

was decided at the summary judgment stage. Nationwide will have an opportunity to move for appropriate relief at that stage if the undisputed material facts demonstrate that there was no waiver.

Accordingly, the Court finds that the amendment is not futile and **GRANTS** Plaintiffs' motion to amend. Further, for the reasons discussed above, the Court finds that the SAC adequately pleads waiver of the suit-limitation provisions. Therefore, Nationwide's motion to dismiss Counts I–IV, VII, and XIII is **DENIED**.

## VI.   Conclusion

Nationwide's motion to dismiss and strike the FAC [ECF 27] is **DENIED**. Plaintiffs' motion to amend the FAC [ECF 30] is **GRANTED**. Nationwide's motion to dismiss Counts I–IV, VII, and XIII as to all Plaintiffs and Counts IX and X as asserted by Emilia is **DENIED**.

The Clerk is **DIRECTED** to file the SAC, ECF 30–1, as the operative complaint in this action and add Emilia as a plaintiff on the docket. The parties are **ORDERED** to confer and submit a revised proposed scheduling order within 14 days after entry of this Order. ECF 67. The discovery stay is hereby lifted.

**SO ORDERED** this the 4th day of August 2020.

Steven D. Grimberg
United States District Court Judge