IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TRANSWORLD FOOD SERVICE, LLC,
a/k/a TRANSWORLD FOODS, and
EMILIA FOODS, LLC,

      Plaintiffs,

          v.

NATIONWIDE MUTUAL INSURANCE
COMPANY,

      Defendant.

Civil Action No.
1:19-cv-03772-SDG

## OPINION AND ORDER

This matter is before the Court on Defendant Nationwide Mutual Insurance Company's (Nationwide) motion for summary judgment [ECF 123] and Plaintiffs TransWorld Food Service, LLC and Emilia Foods, LLC's (collectively, TransWorld) motion for leave to file a surreply [ECF 136]. After careful review of the parties' briefing, and with the benefit of oral argument, the Court **GRANTS** TransWorld's motion for leave to file a surreply and **GRANTS IN PART AND DENIES IN PART** Nationwide's motion for summary judgment.

## I.    BACKGROUND

Unless otherwise noted, the following facts are undisputed or are supported by undisputed evidence in the record. TransWorld Food Service, LLC is a

wholesale food distributor that services restaurants in the Atlanta area.[1]  It was established in May 2015 and started business operations on October 23, 2015.[2] Shortly after it was established, it purchased an existing seafood distribution company, Emilia Foods, LLC,[3] and there has been no meaningful distinction between the two entities since October 22, 2015.[4]

Relevant here, TransWorld held Nationwide businessowner insurance policies from September 6, 2015 to September 6, 2018, and a Nationwide auto policy from September 6, 2015 to September 6, 2016.[5]

### A.    The 2015 Claim

On December 15, 2015, a contractor charged TransWorld's refrigeration system with an incorrect coolant, which impacted certain coolers' ability to reach optimal temperatures.[6] The loss occurred two months after TransWorld made its first sale and TransWorld claimed that it had to lower its prices to compete as a

---

[1]    ECF 129-23 (TransWorld's Resp. to SMF), ¶ 2.

[2]    *Id.* ¶ 3.

[3]    *Id.* ¶ 4.

[4]    *Id.* ¶ 6.

[5]    ECF 129-23, ¶¶ 63–67; ECF 123-2 (2015 Policy); ECF 123-3 (2015 Auto Policy); ECF 123-4 (2016 Policy); ECF 123-5 (2017 Policy).

[6]    ECF 129-23, ¶ 12.

result. TransWorld first tried to recover through the contractor's general liability policy, also issued by Nationwide. Unable to recover under the contractor's policy, TransWorld sought coverage under its own policy on November 9, 2017.[7]

Nationwide denied the 2015 claim on February 8, 2018, finding no direct physical loss or damage to the coolers and noting that TransWorld failed to provide documentation, without which Nationwide could not complete its investigation because it was "2 years post loss date and all repairs ha[d] been made."[8] Nationwide never advised TransWorld that the claim would be barred pursuant to the one-year suit limitation in the policy or that TransWorld failed to provide prompt notice.[9] In denying the claim, Nationwide did, however, reserve its rights, defenses, or contentions available under the insurance policy.[10] TransWorld claims that it is entitled to $476,219.16 for the 2015 claim.[11]

---

[7]   *Id.* ¶ 17.

[8]   ECF 123-8, at 4–8.

[9]   ECF 134-1 (Nationwide's Resp. to Add. SMF), ¶¶ 11, 13.

[10]   ECF 123-9, at 5.

[11]   ECF 123-8, at 17.

B.      **The 2016 Claims**

On January 17, 2016, a component of a water line serving the building where TransWorld operates failed, causing water intrusion and damage to the property.[12] TransWorld notified Nationwide about the damage and Nationwide hired a forensic consulting firm to investigate the loss and a forensic accountant to assess the lost business income.[13] Nationwide paid TransWorld $407,460.42 for damage to the insulated walls for the coolers and freezer, $304,383.00 for damage to business personal property, and $341,715.89 for lost business income.[14] Nationwide made its final payment to TransWorld in March 2018.[15] Nationwide never advised TransWorld that any lawsuit related to the 2016 claim would be barred by the one-year suit limitation in the policy.[16] TransWorld claims that it is entitled to additional payments for its property and business income losses.[17]

---

12   ECF 129-23, ¶ 19; ECF 134-1, ¶ 19.

13   ECF 134-1, ¶¶ 23, 32.

14   ECF 129-23, ¶ 20.

15   ECF 129-23, ¶ 20; ECF 134-1, ¶ 29. There appears to be a dispute about the last payment to TransWorld, and TransWorld itself states that final payments were made in March 2017. *Compare* ECF 129-23, ¶ 20 *with* ECF 134-1, ¶ 29. The claim notes for the 2016 loss show that the last payment was made in March 2018. ECF 123-10, at 12.

16   ECF 134-1, ¶ 33.

17   *Id.* ¶¶ 30, 37.

The water intrusion also damaged vehicles on the property that were covered by the 2016 auto policy.[18] Though Nationwide initially recognized damage to four vehicles, after further investigation it determined that only two of the vehicles were damaged and paid TransWorld $21,961.52 for repairs.[19] TransWorld claims that it is entitled to an additional $41,664.55 under the auto policy for all four damaged vehicles.[20]

### C.   The 2017 Claim

On July 10, 2017, a roofing contractor, retained by the owner of the property, cut the freon supply line that connected to the compressor for TransWorld's freezer, resulting in damage.[21] TransWorld made a claim to the roofing contractor's liability carrier, and was paid $108,532.97, including $70,000 to replace lost inventory.[22] On November 2, 2017, the day after it received its final check from the roofing contractor's carrier, TransWorld reported the loss to Nationwide.[23]

---

[18]   ECF 129-23, ¶ 33; ECF 134-1, ¶ 39.

[19]   ECF 129-23, ¶ 33; ECF 134-1, ¶ 41.

[20]   ECF 129-23, ¶ 34.

[21]   *Id.* ¶ 36; ECF 134-1, ¶¶ 43–44, 48.

[22]   ECF 129-23, ¶ 40.

[23]   *Id.* ¶ 42.

Nationwide investigated the 2017 claim and paid TransWorld $14,957.21 to replace the compressor.[24] Nationwide engaged a forensic accountant to determine the amount of business income lost, who concluded that there was no suspension in business that would trigger a business loss claim.[25] TransWorld claims that it is entitled to an additional $335,971.77 for the 2017 claim.[26] Nationwide never advised TransWorld that any suit related to the 2017 claim would be barred by the one-year suit limitation in the policy.[27] Nationwide did not deny the 2017 claim and still considers the claim to be under investigation.[28]

### D.    The 2018 Claim

On July 22, 2018, a water leak occurred in a unit located near TransWorld's warehouse space.[29] The parties dispute whether the leak damaged TransWorld's property or whether TransWorld lost inventory and business as a result.[30] TransWorld first filed a claim with the property owner's insurer, Travelers, but

---

[24]   *Id.* ¶ 43.

[25]   *Id.* ¶¶ 43–47.

[26]   ECF 123-7, at 12.

[27]   ECF 134-1, ¶ 59.

[28]   *Id.* ¶¶ 57, 61.

[29]   ECF 129-23, ¶ 54; ECF 134-1, ¶ 62.

[30]   ECF 129-23, ¶¶ 55–56.

was denied coverage.[31] Travelers notified Nationwide of the claim on September 20, 2018,[32] but TransWorld did not directly notify Nationwide until March 15, 2019.[33] TransWorld claims that it is entitled to $161,842.58 for business personal property losses, approximately $179,516.66 for business income losses, and an additional $3,253.00 for extra expenses.[34] Nationwide considers the 2018 claim to still be under investigation.[35]

### E.   Procedural History

TransWorld sent a demand letter to Nationwide pursuant to O.C.G.A. § 33-4-6 on May 21, 2019,[36] and subsequently filed suit in the Superior Court of DeKalb County, Georgia.[37] Nationwide timely removed, claiming diversity jurisdiction pursuant to 28 U.S.C. § 1332 because TransWorld Food Service, LLC and its members are citizens of Georgia, Nationwide is a citizen of Ohio, and the amount in controversy exceeds $75,000.[38] The Court granted TransWorld Food Service,

---

[31]   ECF 129-23, ¶¶ 57–58, ECF 134-1, ¶ 63.

[32]   ECF 134–1, ¶ 67.

[33]   ECF 129–23, ¶ 55.

[34]   ECF 123-7, at 9; ECF 129-9, at 1.

[35]   ECF 134-1, ¶ 75.

[36]   *Id.* ¶ 76.

[37]   ECF 1-1.

[38]   ECF 1.

LLC's motion to add Emilia Foods, LLC, which is owned by TransWorld Food Service, LLC, as a Plaintiff.[39]

Nationwide moved to dismiss TransWorld's claims, arguing that the 2015, 2016, and 2017 claims are barred by the one-year suit limitations in the applicable policies.[40] The Court denied the motion, finding that the Complaint plausibly alleged actions that could constitute waiver.[41] The Court noted, however, that Nationwide could raise the suit limitations issue at summary judgment.[42]

Nationwide now moves for summary judgment on the Second Amended Complaint, arguing that (1) the 2015, 2016, and 2017 claims are barred by the one-year suit limitation provisions;[43] (2) TransWorld failed to provide timely notice of the 2015, 2017, and 2018 claims;[44] (3) the 2015 claim, the unpaid 2016 auto claims, and the 2018 claim are not covered by the policy;[45] (4) TransWorld failed to support

---

[39]  ECF 73.

[40]  ECF 27, at 6–7.

[41]  ECF 73, at 21–23.

[42]  *Id.* at 23.

[43]  ECF 123, at 20–21.

[44]  *Id.* at 21–24.

[45]  *Id.* at 24–25.

a claim for lost business income;[46] (5) the virus or bacteria exclusion in the 2016 policy bars the 2016 claim;[47] and (6) the bad faith insurance claims fail as a matter of law.[48] TransWorld responded in opposition to Nationwide's motion,[49] and Nationwide filed a reply.[50]

TransWorld moves for leave to file a surreply, arguing that Nationwide raised new arguments in its reply brief, including an argument that the policies included a provision requiring waivers to be in writing.[51] Nationwide opposes TransWorld's motion.[52] Though most of the arguments TransWorld takes issue with are not new, the Court agrees that the applicability of the written waiver provision was raised for the first time in Nationwide's reply and will grant TransWorld leave to file a surreply. *First Specialty Ins. Corp. v. 633 Partners, Ltd.*, 300 F. App'x 777, 788 (11th Cir. 2008) (leave to file a surreply should be given where

---

[46]   *Id.* at 25–29.

[47]   *Id.* at 31–32.

[48]   *Id.* at 32–35.

[49]   ECF 132.

[50]   ECF 134.

[51]   ECF 136, at 2.

[52]   ECF 137.

movant raises new arguments in reply). The Court has reviewed and considered

TransWorld's surreply in reaching its decision.[53]

## II.   LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). A fact is "material" only if it can affect the outcome of the

lawsuit under the governing legal principles. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986). A factual dispute is "genuine . . . if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Id.*

A party seeking summary judgment has the burden of informing the district

court of the basis for its motion and identifying those portions of the record that

demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986). If a movant meets its burden, the party opposing summary

judgment must present evidence showing either (1) a genuine issue of material

fact or (2) that the movant is not entitled to judgment as a matter of law. *Id.* at 324.

In determining whether a genuine issue of material fact exists, the evidence

is viewed in the light most favorable to the party opposing summary judgment,

---

[53]   ECF 136-1.

"and all justifiable inferences are to be drawn" in favor of that party. *Anderson*, 477

U.S. at 255; *see also Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999).

The Court may not make credibility determinations, weigh the evidence, or draw

legitimate inferences from the facts, as these are jury functions. *Anderson*, 477 U.S.

at 255. *See also Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir.

1999). Summary judgment for the moving party is proper "[w]here the record

taken as a whole could not lead a rational trier of fact to find for the non-moving

party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When, as here, this Court exercises jurisdiction based on diversity of

citizenship, it applies Georgia law. *U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp.*,

550 F.3d 1031, 1033 (11th Cir. 2008). The parties agree that Georgia law applies.

## III.   DISCUSSION

As a threshold issue, the Court will consider the enforceability of the one-

year suit limitation provisions in the policies, and then will consider whether

TransWorld promptly notified Nationwide of its claims and whether the claims

are covered by the terms of the policies.

### A.   One-Year Suit Limitations

The 2015 and 2016 businessowner policies contain a provision prohibiting

legal action unless "[t]he action is brought within 1 year after the date on which

the direct physical loss or damage occurred."[54] These types of provisions are valid and enforceable under Georgia law. *See Thornton v. Ga. Farm Bureau Mut. Ins. Co.*, 287 Ga. 379, 381 (2010) (noting courts have enforced contractual periods of limitations, including one-year limitations).

Georgia courts have recognized, however, that an insurer may waive a contractual limitations period where the insurer's conduct "reasonably leads 'the insured to believe that a strict compliance with the limitation provision would not be insisted upon.'" *Appleby v. Merastar Ins. Co.*, 223 Ga. App. 463, 464 (1996) (quoting *Brown v. Nationwide Ins. Co.*, 167 Ga. App. 84, 85 (1983)). Specifically,

> If the insurer never denied liability, but continually discussed the loss with its insured with a view toward negotiation and settlement without the intervention of a suit, whether or not this lulled the insured into a belief that the 12–month clause in the contract was waived by the insurer can become a disputed question of fact.

*Edwards v. Atl. Ins. Co.*, 203 Ga. App. 608, 610 (1992).

Though the issue of waiver is typically for the jury, *Appleby*, 223 Ga. App. at 464, "where . . . the facts and circumstances essential to the waiver issue are clearly established waiver becomes a question of law." *Mauldin v. Weinstock*, 201 Ga. App. 514, 520 (1991). *See also Vratsinas Const. Co. v. Triad Drywall, LLC*, 321 Ga. App. 451,

---

[54]   ECF 129-23, ¶ 76.

454 (2013) ("[T]he law will not infer the waiver of an important contract right unless 'the waiver is clear and unmistakable.'").

### 1.    Written Waiver

Nationwide argues in its reply brief that the Court need not consider whether its actions create a question of material fact regarding waiver because the policies provide that "policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy."[55]  TransWorld responds that these provisions only apply to coverage terms because it is preceded by a general statement that "[a]ll *coverages* of this policy are subject to the following conditions."[56] TransWorld offers, in support, that the case law cited by Nationwide relates to waivers of insurance coverage and that enforcing the written waiver provision here would be inconsistent with Georgia law.[57]

When interpreting an insurance policy, the Court begins, "as with any contract, with the text of the contract itself. Where the contractual language unambiguously governs the factual scenario before the court, the court's job is simply to apply the terms of the contract as written, regardless of whether doing

---

[55]   ECF 134, at 2–3.

[56]   ECF 136-1, at 1–3.

[57]   *Id.* at 2–3.

so benefits the carrier or the insured." *Reed v. Auto-Owners Ins. Co.*, 284 Ga. 286, 287 (2008). The written waiver provision unambiguously applies, without qualification, to "[t]his policy's terms,"[58] whether related to policy coverage or otherwise. Accordingly, the terms of the policies, including the one-year suit limitations, are only waivable by endorsement. It is undisputed that no endorsement waived the one-year suit limitation for either the 2015 or 2016 policy.

Even so, "[u]nder Georgia law, it is well-established that even 'a provision against waiver of contractual rights may itself be waived.'" *Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159, 1182 (11th Cir. 2010) (quoting *J.W. Truck Sales, Inc. v. Hartrampf Outdoor, L.L.L.P.*, 279 Ga. App. 544, 547 (2006) and *J.E.M. Enters. v. Taco Pronto, Inc.*, 145 Ga. App. 573, 574 (1978)). *See also BCM Constr. Grp., LLC v. Williams*, 353 Ga. App. 811, 816 (2020) (provisions that contract was "entire agreement" or could only be modified by writing did not preclude a finding of oral waiver). The Court will therefore consider whether the circumstances here raise a genuine question of fact regarding waiver.

---

[58]   ECF 123-2, at 96; ECF 123-4, at 80.

### 2. The 2015 Claim

The 2015 loss occurred on December 15, 2015.[59] TransWorld did not notify Nationwide of the claim until nearly two years later.[60] Critically, "[o]nce the time for bringing an action lapses, the forfeiture has taken place, the contract becomes a 'dead letter,' and an agent cannot revive it by an acknowledgment or new promise." *Auto-Owners Ins. Co. v. Ogden*, 275 Ga. 565, 566 (2002). This means that any action by Nationwide's agents taken after December 15, 2016, cannot extend the suit limitations period. As Nationwide was first notified and began investigating the claim in 2017, it could not have made any representations about the claim within the limitations period.

TransWorld argues that *Ogden* is limited to actions taken by an agent after expiration of the contractual limitations period and does not apply to actions taken by the insurer. Though the holding of *Ogden* applied to the actions of an insurer's agent, the Supreme Court of Georgia based its reasoning on the policy being a "dead letter" that an agent cannot revive without express authority. 275 Ga. at 565–66. Applying the reasoning of *Ogden* to an insurer's actions makes sense, as "it is difficult to see how an insured relies on or is lulled by actions occurring after

---

[59]   ECF 129-23, ¶ 12.

[60]   *Id.* ¶ 17.

the period for filing suit has ended." *Fountainbleau 2006, LLC v. U.S. Fire Ins. Co.*, No. 1:09-CV-1702-WSD, 2010 WL 11597704, at *8 (N.D. Ga. Dec. 21, 2010). Nationwide took no action prior to the expiration of the contractual limitations period that could have lulled TransWorld into believing its claim would be paid. Accordingly, there is no genuine dispute of fact concerning waiver of the one-year limitations period for TransWorld's 2015 claim, and it is time barred.[61]

### 3. The 2016 Claim

The 2016 claims resulted from a water leak that occurred on January 17, 2016.[62] TransWorld argues that Nationwide waived the one-year limitations period in the policy because it negotiated the business income claims well beyond the one-year mark.[63]

Under Georgia law, "an insurer's investigation and continued correspondence with an insured up to, and after, expiration of a policy's limitation period, without more, is not sufficient to constitute a waiver of the policy's limitation period." *Alexander v. Allstate Ins. Co.*, No. 1:13-CV-2426-WSD, 2014 WL

---

[61] Notably, TransWorld's delay in bringing this claim hindered Nationwide's ability to investigate it and was likely a factor in the denial of coverage. ECF 123-8, at 4–8.

[62] ECF 129-23, ¶ 19.

[63] ECF 129, at 21–22.

4093725, at *8 (N.D. Ga. Aug. 19, 2014) (citing *Ga. Farm Bureau Mut. Ins. Co. v. Pawlowski*, 284 Ga. App. 183 (2007) (evidence of investigation and settlement offer is insufficient to show waiver)); O.C.G.A. § 33-24-40 (claims administration, including acknowledging loss, furnishing forms, investigating, and negotiating settlement "shall not be deemed to constitute a waiver of any provision of a policy or of any defense of the insurer under the policy"). Indeed, without more, making numerous payments to an insured over several months does not constitute waiver of the limitation defense, particularly where it is clear that the insurer did not intend to pay the full claim amount. *Premier Eye Care Assocs., P.C. v. Mag Mut. Ins. Co.*, 355 Ga. App. 620, 626 (2020), *cert. denied* (May 17, 2021).

Nationwide investigated the 2016 claim, corresponded with TransWorld about its investigation, and ultimately paid TransWorld $1,056,454.64 for property damage and lost business income.[64] Nationwide hired a consulting firm and a forensic accountant to aid the investigation. [65] These actions, taken alone, do not constitute waiver. O.C.G.A. § 33-24-30(3). However, Nationwide's actions with respect to the business income loss raise genuine questions of material fact as to

---

[64]   ECF 129-23, ¶ 20.

[65]   ECF 134-1, ¶¶ 22–24, 32.

whether it lulled TransWorld into believing the full amount of the 2016 claim would be resolved without a suit.[66]

The claim notes for the 2016 Claim reflect that Nationwide understood it could not complete the business income loss evaluation until the end of the restoration period, which "might last 12 months from the date of loss."[67] Still, it authorized partial payments to TransWorld for business income losses, on an ongoing basis, based on records submitted by TransWorld.[68] Nationwide did not submit evidence into the record showing that it reserved its rights under the policy when making each of these payments,[69] some of which were made after the one-year suit limitations period. This is sufficient to create a genuine issue of material fact as to whether Nationwide waived the limitations period. *Appleby*, 223 Ga.

---

[66] At oral argument, counsel for Nationwide represented that the business income loss and the property damage loss were part of a single claim, not two separate claims.

[67] ECF 123–10, at 72.

[68] *Id.* at 60, 64, 67, 70.

[69] At oral argument, the Court inquired whether Nationwide reserved its rights under the policies for each claim. Counsel for Nationwide believed that it did but could not cite evidence in support. The Court granted leave to Nationwide to follow up and provide record citations. In an e-mail communication with the Court following the hearing, which copied counsel for TransWorld, Nationwide submitted purported evidence in this regard, but these materials are not part of the summary judgment record. The Court will therefore not consider these materials in the motion before it.

App. at 464 (conflicting evidence on whether examination was scheduled for after limitations period raised question of material fact on issue of whether insurers' actions "up to and past the period of limitation" led insured to believe limitations provisions had been waived).

This is not the end of the inquiry, however, as courts applying Georgia law have held that an insurer's waiver of a suit-limitations period during negotiations does not operate as a complete waiver, but "merely toll[s] the time for filing the action" until the claim is denied. *Looney v. Ga. Farm Bureau Mut. Ins. Co.*, 141 Ga. App. 266, 267 (1977); *Dittler Bros. v. Allendale Mut. Ins. Co.*, 509 F. Supp. 514, 516 (N.D. Ga. 1981) (where insurer waives policy limitations period, limitations runs from date insurer denied liability). Nationwide's last payment to TransWorld, sent along with the partial denial of TransWorld's business income loss claim, was on or about March 22, 2018.[70] TransWorld did not send a demand to Nationwide until over one year later, on May 21, 2019, and eventually filed suit on July 22, 2019.[71] TransWorld's 2016 claim is, therefore, time barred under the contractual limitations period.

---

[70]   *Id.* at 12.

[71]   ECF 1-1.

### 4. The 2017 Claim

The loss giving rise to the 2017 claim occurred on July 10, 2017.[72] For this claim, Nationwide conducted an investigation, including hiring a forensic accountant, and communicated with TransWorld to exchange documents in evaluation of the claim.[73] Nationwide paid Transworld $14,957.21 to replace the damaged compressor to the walk-in freezer but, unlike the 2016 claim, has not yet denied the remainder of the claim and considers it to still be under investigation.[74] Accordingly, "[t]here is evidence that, up to the date the [insured] filed suit, the insurer never denied liability and took actions (including issuing checks for payment) which represented that it intended to pay the claim without suit." *Balboa Life & Cas., LLC v. Home Builders Fin., Inc.*, 304 Ga. App. 478, 481 (2010) (finding partial payment of claim unaccompanied by denial created an issue of fact as to waiver). A question of material fact remains as to whether Nationwide waived the one-year suit limitation for the 2017 claim.

---

[72]   ECF 129-23, ¶ 36.

[73]   ECF 129-23, ¶¶ 43–51; ECF 134-1, ¶ 58.

[74]   ECF 129-23, ¶ 43; ECF 134-1, ¶ 61.

### B.      Notice Condition Precedent

Nationwide also argues that the 2015, 2017, and 2018 claims should be dismissed because TransWorld failed to give prompt notice of those claims, which is a condition precedent to recovery.[75] TransWorld responds that timeliness, or the justification for untimeliness, are questions of fact for the jury and are inappropriate for disposition at summary judgment.

A notice provision that "uses language which otherwise clearly expresses the intention that the notice provision be treated as a condition precedent," will be treated as such. *State Farm Fire & Cas. Co. v. LeBlanc*, 494 F. App'x 17, 21 (11th Cir. 2012) (emphasis omitted) (quoting *Res. Life Ins. Co. v. Buckner*, 304 Ga. App. 719, 717 (2010)). A notice provision located in a section using the language of "you must see to it" or entitled "General Conditions" or "Duties in the Event of . . . Claim or Suit," will be treated as a condition precedent to coverage. *LeBlanc*, 494 F. App'x at 21. Moreover, a policy that includes a notice provision and requires compliance with its terms to bring legal action expresses an intention that notice be a condition precedent. *Progressive Mountain Ins. Co. v. Bishop.*, 338 Ga. App. 115, 118 (2016). The policies at issue include a notice provision under the section entitled  "Duties in

---

[75]   ECF 123, at 21–24.

the Event of Loss or Damage," which requires an insured to "see that" "prompt notice" of the loss is given, and conditions suit on "full compliance" with the policy.[76] The parties do not dispute, and the Court finds, that the notice provisions are a condition precedent to suit.

TransWorld is correct that "[u]nder Georgia law, whether an insured gave an insurer timely notice of an event or occurrence under a policy generally is a question for the factfinder." *Id.* Whether a delay in giving notice is justified is also generally a question of fact. *Id.* "Nevertheless, the facts and circumstances of a particular case may render an insured's delay in giving notice of an occurrence to his insurer unjustified and unreasonable as a matter of law." *Id.* at 118–19 (quoting *Plantation Pipe Line Co. v. Stonewall Ins. Co.*, 335 Ga. App. 302, 306 (2015)). Courts applying Georgia law have found delays as short as four months to be unreasonable as a matter of law if there is no justification. *See Currie v. Auto-Ins. Co.*, No. 1:20-CV-02160-ELR, 2021 WL 4354188, at *7 (N.D. Ga. Aug. 12, 2021) (collecting cases), *aff'd*, No. 21-13174, 2022 WL 401540 (11th Cir. Feb. 10, 2022).

---

[76]  ECF 123-2, at 52–53; ECF 123-4, at 38–39; ECF 123-5, at 39–40.

### 1.    The 2015 Loss

The Court has already found that the 2015 claim is time barred. Even if the claim was not time barred, however, it would fail because TransWorld did not give prompt notice of the claim. TransWorld waited nearly two years to notify Nationwide of its claim, which is unreasonable as a matter of law, and TransWorld's belief that it could recover from the contractor's insurer is an insufficient justification for such an extensive delay. *Lankford v. State Farm Mut. Auto. Ins. Co.*, 307 Ga. App. 12, 14–15 (2010) (failure to notify for nearly two years based on belief that other insurance would cover claim was unreasonable as a matter of law). "To hold otherwise 'would allow an insured to delay notifying the insurer for months or even years, so long as the insured thought that other insurance existed to cover the loss. Such an interpretation is contrary to the obvious intent of the policy, which is to require notice [within a reasonable period] after the occurrence of a covered event.'" *Id.* (quoting *Manzi v. Cotton States Mut. Ins. Co.*, 243 Ga. App. 277, 281 (2000)).

### 2.    The 2017 Loss

For the 2017 claim, TransWorld waited four months to notify Nationwide.[77] It justifies this delay on its belief that the at-fault party would compensate it for

---

[77]    ECF 129-23, ¶ 42.

the damages. As with the 2015 claim, TransWorld's misunderstanding as to liability is not a sufficient justification. *Lankford*, 307 Ga. App. at 14–15; *Cotton States Mut. Ins. Co. v. Hipps*, 224 Ga. App. 756, 757 (1997) (misunderstanding as to at-fault party responsibility cannot alter plain contract language requiring notice within specific time). Absent a reasonable justification, a delay of four months is unreasonable as a matter of law. *See e.g., Auto Owners Ins. Co. v. Sapp*, No. 1:15-CV-90 (LJA), 2017 WL 957361, at *4 (M.D. Ga. Mar. 10, 2017) (insured's delay of four months was unreasonable where based on belief that it would not be held liable); *Advoc. Networks, LLC v. Hartford Fire Ins. Co.*, 296 Ga. App. 338, 340 (2009) (delay of four months was unreasonable where based on misunderstanding about liability). TransWorld's four-month delay in reporting the claim, based on its belief that another party would be responsible for payment, is unjustified and, therefore, TransWorld failed to satisfy the notification condition precedent to coverage. TransWorld's 2017 claim fails as a matter of law.

### 3. The 2018 Loss

TransWorld waited eight months after the July 22, 2018, loss to notify Nationwide because it believed that Nationwide would cancel its coverage and because it believed that it could recover from the insurance carrier of the property

owner (the at-fault party).[78] Again, these misunderstandings are not a justification for failing to give prompt notice of the claim. *Lankford*, 307 Ga. App. at 14–15; *Cotton States Mut. Ins. Co.*, 224 Ga. App. at 757. However, although TransWorld did not notify Nationwide of the loss for eight months, the property owner's insurer, Travelers, notified Nationwide of the claim on September 20, 2018, nearly two months after the loss.[79] The parties dispute whether this notice by Travelers satisfies TransWorld's duty to notify under the relevant policy.

In relevant part, the policy provides that "[TransWorld] must see to it that the following are done . . . give us prompt notice of the loss or damage."[80] Relying on *Lankford*, Nationwide argues that notification from an unrelated third party does not relieve an insured's obligation to give notice under the contract. In *Lankford*, the insurer happened to also be the insurer for the other party involved in the collision and was alerted of the incident through the other party. 307 Ga. App. 12, at 15–16. The Georgia Court of Appeals found that the insurer was not responsible for cross-referencing the names of parties involved and, instead, was "entitled to rely upon its contractual notice provisions." *Id.* at 16.

---

[78]   ECF 129, at 27.

[79]   ECF 134-1, ¶¶ 62, 67.

[80]   ECF 123-5, at 39.

The notification provision at issue in *Lankford*, however, differs from the one at issue here in that it required a *written* notice as soon as reasonably possible. *Id.* at. 14. The applicable policy for the 2018 claim does not require the notification to be in writing and, moreover, it does not require that the insured be the one to provide notice. Instead, it provides that the insured "must see that" notice be given to Nationwide.[81] Further, the circumstances differ because Nationwide was not required to cross-reference the parties to an accident to determine whether an insured was involved. Instead, Travelers gave notice to Nationwide *because* it was TransWorld's insurer.[82]

Without a policy provision stating otherwise, notice given by an injured party, or its insurer, is sufficient to satisfy the notice requirement. *See Hous. Enter. Ins. Co., Inc. v. AmTrust Ins. Co. of Kansas, Inc.*, 212 F. Supp. 3d 1330, 1346 (N.D. Ga. 2016) (under Georgia law "you must see to it that we are notified as soon as practicable" does not require notice of claim to come only from insured to satisfy condition precedent); *Stonewall Ins. Co. v. Farone*, 129 Ga. App. 471, 474 (1973) (to satisfy notice provision in policy "it makes no difference who gives the notice, so long as a reasonable and timely notice is given the company and it has actual

---

[81]   *Id.*

[82]   ECF 123-21, at 10.

knowledge of the pendency of a claim or suit"). There is at least a genuine question of material fact as to whether a delay of two months in providing notice is reasonable, and so summary judgment is not warranted on the 2018 claim.

### C. Coverage for the 2016 Auto Claim

TransWorld also seeks recovery under its 2016 Auto Policy for water damage to four of its vehicles as a result of the 2016 water leak.[83] Nationwide paid TransWorld $21,961.52 for the repairs to two of the four vehicles.[84] TransWorld claims that it is entitled to an additional $41,664.55.[85]

The 2016 auto policy provides coverage for "property damage," defined as "damage to or loss of use of tangible property."[86] Nationwide argues that the vehicles it did not provide payment for were not physically damaged and, therefore, were not covered by the policy.[87] The presence and extent of water damage to the four vehicles is in dispute, and Nationwide concedes that its ultimate determination that only two of the vehicles were damaged differed from

---

[83]   ECF 234-1, ¶¶ 38–42.

[84]   ECF 134-1, ¶ 41; ECF 129-23, ¶ 33.

[85]   ECF 129-23, ¶ 34.

[86]   ECF 123-3, ¶¶ 17, 27.

[87]   ECF 123, at 24–25.

its initial determination.[88] This is enough to raise a question of material fact regarding the vehicle damage, and the Court declines to grant summary judgment on the 2016 auto loss claim.

### D.    Coverage for the 2018 Claim

For the 2018 claim, TransWorld claims that it is entitled to $161,842.58 for business personal property losses, approximately $179,516.66 for business income losses, and an additional $3,253.00 for extra expenses.[89] Nationwide argues that the 2018 claim is not covered by the policy because TransWorld is not entitled to business income loss and because no physical damage occurred to TransWorld's property that would entitle it to coverage.

#### 1.    Business Income Loss

Nationwide argues that TransWorld is not entitled to any payment for lost business income because it lacks a record of profitability and because it failed to show a suspension in business that would warrant the claim.[90] TransWorld responds that its profits are quantifiable and that the policy terms do not require

---

88    ECF 134-1, ¶¶ 39–42.

89    ECF 123-7, at 9; ECF 129-9, at 1.

90    ECF 123, at 25–29.

complete cessation of all business activity.[91] The Court disagrees with TransWorld's interpretation and finds that reduction in business activity is not a "suspension of operations" covered under the policies.

The policy at issue provide that Nationwide "will pay for the actual loss of 'business income' you sustain due to the necessary suspension of your 'operations' during the 'period of restoration.'"[92] The policy does not define "suspension," but the Court finds that the meaning is unambiguous. *Reed,* 284 Ga. at 287 (2008) (courts will apply unambiguous terms of a policy as written, regardless of whether it benefits the insurer or insured). The plain meaning of "suspension" is "a temporary, but complete, cessation of activity." *Home Indem. Co. v. Hyplains Beef, L.C.*, 893 F. Supp. 987, 991 (D. Kan. 1995), *aff'd*, 89 F.3d 850 (10th Cir. 1996) (citing Webster's Third New International Dictionary) (defining "suspension of your operations"). Suspension does not mean a lessened demand, an impact on sales, or a diminution in the volume of service; it refers to loss resulting from an inability to operate due to a physical damage. *See Ramada Inn Ramogreen, Inc. v. Travelers Indem. Co. of Am.*, 835 F.2d 812, 814 (11th Cir. 1988) (collecting cases on interruption of business). *See also CSX Corp. v. N. River Ins. Co.*, No. 308CV00531J25MCR, 2009

---

91    ECF 129, at 31–35.

92    ECF 123-5, at 17–18.

WL 10671267, at *6 (M.D. Fla. Sept. 25, 2009) ("[L]essened demand does not constitute a suspension of business.").

TransWorld cites *Fountainbleau* for its position that lost business income includes losses "from suspended or reduced operations." 2010 WL 11597704, at *7. This statement is dicta and was used in the context of defining "business income" loss in contrast to physical damage loss. *Id.* The Court did not define "suspended operations" in interpreting "business income," and, in fact, the statement cited by TransWorld suggests that "suspended" and "reduced" are distinct concepts.

TransWorld admits that it never ceased operation after any of the losses,[93] and it has only showed that its sales were impacted by the loss of inventory.[94] TransWorld, therefore, is not entitled to coverage for lost business income. This is true even though Nationwide paid TransWorld for lost business income related to the 2016 claim. *Danforth v. Gov't Emps. Ins. Co.*, 282 Ga. App. 421, 427 (2006) ("It is well established . . . that the doctrines of implied waiver and estoppel, based upon the conduct or action of the insurer, or its agent, are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom.'") (punctuation omitted).

---

[93]   ECF 129-32, ¶¶ 15, 29, 48.

[94]   ECF 129, at 33–35.

### 2.      Physical Damage

As for whether the 2018 water leak resulted in physical damage, Nationwide argues that TransWorld has not provided evidence to support its claim that the water leak caused damage to its property.[95] But TransWorld attached to its opposition brief declarations and photographs that reflect water pooling on the floor of TransWorld's property after the 2018 leak and built-up frozen condensation in the freezer where its inventory was kept.[96] This is sufficient to raise a question of material fact. Indeed, at oral argument, Nationwide's counsel rightly conceded that considering the probative value of the photographs to TransWorld's claims would require weighing evidence, which is inappropriate at the summary judgment stage. Nationwide is not entitled to summary judgment on the 2018 claim for physical damage.

### E.      Bad Faith Failure to Pay

TransWorld also asserts a claim for bad faith failure to pay related to each of the losses under O.C.G.A. § 33-4-6.

> To support a cause of action under OCGA § 33–4–6, "the insured bears the burden of proving that the refusal to pay the claim was made in bad faith." To do so, the insured must prove "(1) that the claim is covered under

---

[95]   ECF 123, at 25.

[96]   ECF 129-20, at 8–16; ECF 129-21, at 9–11.

> the policy, (2) that a demand for payment was made
> against the insurer within 60 days prior to filing suit, and
> (3) that the insurer's failure to pay was motivated by bad
> faith."

*Auto-Owners Ins. Co. v. Neisler*, 334 Ga. App. 284, 290 (2015) (citations omitted).

Under Georgia law, "[t]he question of whether an insurer acted in bad faith

ordinarily is for the jury." *Scheinfeld v. LM Gen. Ins. Co.*, 472 F. Supp. 3d 1329, 1345

(N.D. Ga. 2020). The Court may grant summary judgment on a bad faith claim,

however, "when there is no evidence of unfounded reason for the nonpayment or

if the issue of liability is close." *Id.* (quoting *Homick v. Am. Cas. Co.*, 209 Ga. App.

156, 156 (1993)).

Since the breach of contract claims related to the 2015, 2016, and 2017

businessowner policy losses have been dismissed, as has the 2018 business income

loss, the Court also dismisses the related bad faith claims. *Id.* (summary judgment

warranted on bad faith failure to pay claim where insurer had complete defense

to insurance claim).

For the 2016 auto claim, TransWorld notes that Nationwide contradicted its

own claim notes on which vehicles were damaged, and the extent of such

damage.[97] With respect to the 2018 physical damage claim, TransWorld argues

---

[97]   ECF 129, at 39; ECF 134-1, ¶¶ 39–41.

that the claim still has not been adjusted, and that Nationwide has not given a reason for failing to make payments to date.[98] Drawing inferences in favor of TransWorld, the Court finds that there exist genuine issues of material fact sufficient for these bad faith claims to survive summary judgment.

## IV.   CONCLUSION

TransWorld's motion for leave to file a surreply [ECF 136] is **GRANTED**. Nationwide's motion for summary judgment [ECF 123] is **GRANTED IN PART AND DENIED IN PART.** Counts I, II, III, IV, VII, and VIII are **DISMISSED**. TransWorld may pursue its claims for breach of contract and bad faith failure to pay related to the 2016 auto loss and the 2018 physical damage loss. The parties are **ORDERED** to file a Joint Proposed Pretrial Order within 30 days of this Order.

**SO ORDERED** this 28th day of March, 2022.

Steven D. Grimberg
United States District Court Judge

---

[98]   ECF 129, at 40; ECF 134-1, ¶ 75.