**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **TRANSWORLD FOOD** | ) | |
| **SERVICE, LLC a/k/a** | ) | |
| **TRANSWORLD FOODS and** | ) | |
| **EMILIA FOODS, LLC** | ) | **CIVIL ACTION** |
| | ) | **FILE NO: 1:19-CV-3772-SDG** |
| **Plaintiffs,** | ) | |
| **vs.** | ) | |
| | ) | |
| **NATIONWIDE MUTUAL** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**THIRD AMENDED COMPLAINT**

COME NOW, TransWorld Food Service, LLC a/k/a TransWorld Foods and Emilia Foods, LLC and, with the consent of Defendant Nationwide Mutual Insurance Company, pursuant to Fed. R. Civ. Pro. 15(a)(2), file this Third Amended Complaint, alleging as follows:

**PARTIES AND BACKGROUND**

1.    Plaintiff TransWorld Food Service, LLC a/k/a TransWorld Foods (hereinafter "Plaintiff TWFS") is a Georgia limited liability company with its principal place of buisness in DeKalb County, Georgia.

2.    Plaintiff TWFS is a wholesale food distributor that operates its business out of 1694 Chantilly Drive NE, Atlanta, GA 30324 and 1692 Chantilly

Drive NE Atlanta, GA 30324 (collectively, the "Property").  The Property contains business offices and commercial warehouse, cooler and freezer space, including a walk-in commercial freezer.

3.    Plaintiff Emilia Foods, LLC (hereinafter "Plaintiff Emilia") is a Georgia limited liability company with its principal place of business in DeKalb County, Georgia.

4.    Nationwide Mutual Insurance Company ("Defendant") is a foreign corporation authorized to do business in the State of Georgia.

5.    Defendant is subject to the jurisdiction of this Court.

6.    Between 2015 and 2018, Defendant issued and renewed insurance policy contracts to Plaintiff Emilia and Plaintiff TWFS (collectively, "Plaintiffs") which provided coverage for the Property.  Those policies are identified as follows:

    a) Policy Number ACP BPWM 2326321290; Effective Dates September 6, 2015 – September 6, 2016 ("2015-2016 Policy");

    b) Policy Number ACP BPWM 2336321290; Effective Dates September 6, 2016 -  September 6, 2017 ("2016-2017 Policy"); and

    c) Policy Number ACP BPWM 2346321290; Effective Dates September 6, 2017 – September 6, 2018 ("2017-2018 Policy").

The aforementioned policies shall be collectively referred to herein as the "Policies." Certified copies of the Policies will be produced during discovery in this case.

7.     Plaintiff TWFS formed as a Georgia limited liability company on May 11, 2015.

8.     In August 2015, Plaintiff TWFS and Plaintiff Emilia entered into a stock purchase agreement.

## **2015 LOSS**

9.     In the process of commencing operations at the Property, Plaintiffs retained Dwight Edward Dickson d/b/a Dickson HVAC Services ("Dickson HVAC") to install insulated wall panels for its walk-in freezer and six commercial coolers in the Property.  This work required Dickson HVAC to complete the hookups for the freezer and coolers, including the installation of proper refrigerant.

10.     Dickson HVAC retained Jason Villegas of Villegas & Company, LLC d/b/a EJ Coolers ("Villegas") as a subcontractor to perform all work associated with the freezer and refrigeration cooler system at the Property, including installing the Freon for the freezer and refrigeration cooler system.

11.     The proper grade Freon for the Plaintiffs' walk-in freezer and cooler refrigeration system was 404A.

12.     Villegas negligently purchased and used MO99 Freon, an improper grade of Freon, as the refrigerant when assembling the Plaintiffs' walk-in freezer and cooler system (the "2015 Loss").

13.    On or around December 15, 2015, the 2015 Loss resulted in direct physical damage to the Plaintiffs' commercial walk-in freezer, six commercial coolers, and a cooler processing room in the Property.

14.    The 2015 Loss was a covered cause of loss to covered property under the terms and conditions of the 2015-2016 Policy.

15.    The 2015 Loss also constituted a covered Equipment Breakdown loss under the terms and conditions of the 2015-2016 Policy.

16.    As a result of the 2015 Loss, Plaintiffs sustained damages covered under the 2015-2016 Policy in the form of repair costs to damaged covered property, loss of business income, loss of and damage to business personal property, and extra expenses.

17.    Plaintiffs filed a claim under the 2015-2016 Policy with Defendant for the covered damages caused by the 2015 Loss.  Defendant assigned claim number 266588-GG to the 2015 Loss ("2015 Claim").  Plaintiff adjusted the 2015 Claim.

18.    On February 8, 2018, Defendant unreasonably and frivolously denied the 2015 Claim.  The denial letter sent to Plaintiffs did not reference the suit limitations provision in the 2015-2016 Policy as a basis for denial of the 2015 Claim.  Despite issuing a denial letter, Defendant continued to investigate and negotiate the 2015 Claim with Plaintiffs, including, but not limited to, by questioning the Plaintiffs regarding the 2015 Claim, among all other claims

identified herein, in an examination under oath of Plaintiffs' representative Teri Blevins ("Blevins EUO").

19.    Defendant obtained the Blevins EUO on January 8, 2019.

20.    Defendant's continuous investigation and negotiation of the 2015 Claim led Plaintiffs to believe that Defendant would make payment for the 2015 Loss without Plaintiffs having to file suit.  Defendant's continuous investigation and negotiation of the 2015 Claim beyond December 15, 2016 led Plaintiffs to believe that any potentially applicable suit limitations provision in the 2015-2016 Policy would not apply to the 2015 Claim.

21.    On May 21, 2019, Plaintiffs sent a demand to Defendant, pursuant to O.C.G.A. § 33-4-6, for payment of the 2015 Loss pursuant to the terms and conditions of the 2015-2016 Policy.

22.    Rather than respond to the Plaintiffs' demand letter, Defendant offered to mediate the dispute between the parties related to the 2015 Loss, and all other losses alleged herein.  Mediation was scheduled for August 7, 2019, but did not go forward because Defendant cancelled the mediation on August 5, 2019.

23.    Defendant unreasonably and frivolously failed to make payment to the Plaintiffs for the 2015 Loss within sixty days of the Plaintiff's May 21, 2019 demand.

## <u>2016 LOSS</u>

24.    On January 17, 2016, a backflow preventer in the fire-water main servicing the Property failed ("2016 Loss).

25.    The 2016 Loss resulted in massive amounts of water entering the Property from the exterior grade of the Property as well as water breaching and discharging from underneath the interior slab of the Property.

26.    The 2016 Loss resulted in direct physical damage to the Property and the Plaintiffs' business personal property located in the Property.

27.    The 2016 Loss was a covered cause of loss to covered property under the terms and conditions of the 2015-2016 Policy.

28.    As a result of the 2016 Loss, Plaintiffs sustained damages covered under the 2015-2016 Policy in the form of repair costs to damaged covered property, loss of business income, loss of and damage to business personal property, and extra expenses.

29.    Plaintiffs filed a claim with Defendant under the 2015-2016 Policy for the covered damages caused by the 2016 Loss ("2016 Claim").

30.    Defendant adjusted the 2016 Claim, accepted the 2016 Claim as a covered claim under the 2015-2016 Policy, and made certain, partial payments to Plaintiffs for the 2016 Claim.  Defendant made certain, partial payments to

Plaintiffs for the 2016 Claim more than one year after the 2016 Loss, including, but not limited to, payments in July 2018.

31.    Defendant continued to investigate and negotiate the 2016 Claim with Plaintiffs after making initial, partial payments for the 2016 Claim, including, but not limited to, by taking the Blevins EUO and requesting financial documents from Plaintiffs in order to assess potential further coverage owed for the 2016 Loss. Defendant never indicated that any specific portion of the 2016 Claim was not covered; however, Defendant failed to make payment to Plaintiffs for the full amount of covered damages sustained as a result of the 2016 Loss. Specifically, Defendant failed to make payment to Plaintiffs for the full amount of covered building damages, business income losses, and extra expense damages incurred as a result of the 2016 Loss.

32.    Defendant's continuous investigation and negotiation of the 2016 Claim led Plaintiffs to believe that Defendant would make payment for the full amount of the covered damages arising from the 2016 Loss without Plaintiffs having to file suit.  Defendant's continuous investigation and negotiation of the 2016 Claim beyond January 17, 2017, including making payments on the 2016 Claim after January 17, 2017, led Plaintiffs to believe that any potentially applicable suit limitations provision in the 2015-2016 Policy would not apply to the 2016 Claim.

33.    On May 21, 2019, Plaintiff sent a demand to Defendant, pursuant to O.C.G.A. § 33-4-6, for supplemental payment for the 2016 Loss pursuant to the terms and conditions of the 2015-2016 Policy.

34.    Rather than respond to the Plaintiffs' demand letter, Defendant offered to mediate the dispute between the parties related to the 2016 Loss, and all other losses alleged herein.  Mediation was scheduled for August 7, 2019, but did not go forward because Defendant cancelled the mediation on August 5, 2019.

35.    Defendant unreasonably and frivolously failed to make supplemental payment to the Plaintiff for the 2016 Loss within sixty days of the Plaintiff's May 21, 2019 demand.

## 2017 LOSS

36.    On July 10, 2017, the Plaintiffs received notice from the Property landlord that a contractor ("Tip-Top Roofers") retained by the landlord to perform repairs to the roof of the Property negligently cut the Freon supply line to the Plaintiffs' walk-in freezer in the course of those repairs ("2017 Loss").

37.    Tip-Top Roofer's negligent cutting of the Freon supply line to the walk-in freezer caused all of the Freon servicing the Plaintiffs' walk-in freezer to escape and evaporate. The evaporation of the Freon servicing the walk-in freezer destroyed and spoiled the Plaintiffs' business personal property stored in the freezer.

38.    The 2017 Loss also resulted in direct physical damage to the Plaintiffs' walk-in freezer and business personal property stored in the freezer.

39.    The 2017 Loss was a covered cause of loss to covered property under the terms and conditions of the 2016-2017 Policy.

40.    As a result of the 2017 Loss, Plaintiffs sustained damages covered under the 2016-2017 Policy in the form of repair costs to damaged covered property, loss of business income, loss of and damage to business personal property, and extra expenses.

41.    The insurance carrier for Tip-Top Roofers, Continental Insurance Company ("Continental"), provided payment to the Plaintiffs for a portion of the Plaintiffs' covered property and business personal property damages.  Continental did not compensate Plaintiffs for all of its covered property and business personal property damages, nor did it compensate Plaintiffs for any of its business income losses or extra expenses incurred as a result of the 2017 Loss.

42.    Plaintiffs filed a claim with Defendant under the 2016-2017 Policy for the uncompensated, covered damages arising out of the 2017 Loss.  Defendant assigned claim number 227554-GG to the 2017 Loss ("2017 Claim").

43.    Defendant adjusted the 2017 Claim, accepted the 2017 Claim as a covered claim under the 2016-2017 Policy, and made certain, partial payments to Plaintiffs for damage to its walk-in freezer sustained as a result of the 2017 Loss.

44.    After making payment for the damage to the walk-in freezer sustained as a result of the 2017 Loss, Defendant continued to investigate and negotiate the 2017 Claim with Plaintiffs, including, but not limited to, by taking the Blevins EUO and requesting financial documents from Plaintiffs in order to assess potential further coverage owed for the 2017 Loss.  Defendant never indicated that any specific portion of the 2017 Claim was not covered; however, Defendant failed to make payment to Plaintiffs for the full amount of covered damages sustained as a result of the 2017 Loss.

45.    Defendant's continuous investigation and negotiation of the 2017 Claim led Plaintiffs to believe that Defendant would make payment for the full amount of coverage owed for the 2017 Loss without Plaintiffs having to file suit. Defendant's continuous investigation and negotiation of the 2017 Claim beyond July 10, 2018 led Plaintiffs to believe that Defendant would not enforce any potentially applicable suit limitations provision in the 2016-2017 Policy.

46.    On May 21, 2019, Plaintiffs sent a demand to Defendant, pursuant to O.C.G.A. § 33-4-6, demanding payment, pursuant to the terms and conditions of the 2016-2017 Policy, for its uncompensated, covered damages arising out of the 2017 Loss.

47.    Rather than respond to the Plaintiffs' demand letter, Defendant offered to mediate the dispute between the parties related to the 2017 Loss, and all

other losses alleged herein.  Mediation was scheduled for August 7, 2019, but did not go forward because Defendant cancelled the mediation on August 5, 2019.

48.    Defendant unreasonably and frivolously failed to make payment to the Plaintiffs for the 2017 Loss within sixty days of the Plaintiffs' May 21, 2019 demand.

### 2018 LOSS

49.    On July 22, 2018, a substantial water leak occurred from a plumbing line servicing a second-story unit in the Property occupied by the Plaintiffs' landlord ("2018 Loss").

50.    The water from this leak entered the Plaintiffs' walk-in freezer and caused direct physical damage to the Plaintiffs' business personal property stored in the freezer.

51.    The 2018 Loss was a covered cause of loss to covered property under the terms and conditions of the 2017-2018 Policy.

52.    As a result of the 2018 Loss, Plaintiffs sustained damages covered under the 2017-2018 Policy in the form of loss of business income, loss of and damage to business personal property, and extra expenses.

53.    Plaintiffs filed a claim with Defendant under the 2017-2018 Policy for the covered damages caused by the 2018 Loss.  Defendant assigned claim number 735464-GI to the 2018 Loss ("2018 Claim").

54.    On April 4, 2019, Defendant sent correspondence to Plaintiffs through counsel requesting an inspection of the Property that "may relate to any or all of the claims that your client has made."

55.    Defendant conducted an inspection of the Property, pursuant to its request for an inspection related to any and all of Plaintiffs' claims, on May 1, 2019.

56.    Defendant subsequently unreasonably and frivolously failed to make payment to the Plaintiffs for the covered damages arising out of the 2018 Loss.

57.    On May 21, 2019, Plaintiffs sent a demand to Defendant, pursuant to O.C.G.A. § 33-4-6, demanding payment, pursuant to the terms and conditions of the 2017-2018 Policy, for its covered damages arising out of the 2018 Loss.

58.    Rather than respond to the Plaintiffs' demand letter, Defendant offered to mediate the dispute between the parties related to the 2018 Loss, and all other losses alleged herein. Mediation was scheduled for August 7, 2019, but did not go forward because Defendant cancelled the mediation on August 5, 2019.

59.    Defendant unreasonably and frivolously failed to make payment to the Plaintiffs for the 2018 Loss within sixty days of the Plaintiffs' May 21, 2019 demand.

## COUNT I – BREACH OF CONTRACT (2015 LOSS)

60.    Plaintiff incorporates and alleges by reference paragraphs 1-59 above as if the same were stated herein verbatim.

61.    The 2015-2016 Policy constitutes a contract between Plaintiffs and Defendant.

62.    The 2015 Loss sustained by the Plaintiffs was a Covered Cause of Loss to Covered Property under the terms and conditions of the 2015-2016 Policy.

63.    Under the terms and conditions of the 2015-2016 Policy, Defendant was obligated to provide payment to the Plaintiffs for the covered damages arising out of the 2015 Loss.

64.    Defendant improperly and unreasonably failed to make any payment to the Plaintiffs for the 2015 Loss as required by the 2015-2016 Policy.

65.    Defendant's improper and unreasonable failure to provide payment to the Plaintiffs for the 2015 Loss constitutes a breach of contract.

66.    Plaintiffs have sustained damages in an amount to be proven at trial as a result of Defendant's breach alleged in Count I herein.

## COUNT II – BAD FAITH (O.C.G.A. § 33-4-6) (2015 LOSS)

67.    Plaintiffs incorporate and allege by reference paragraphs 1-66 above as if the same were stated herein verbatim.

68.     Plaintiffs made a demand for payment of the 2015 Loss pursuant to O.C.G.A. § 33-4-6 on May 21, 2019.

69.     Defendant unreasonably and frivolously failed to provide payment to the Plaintiffs for the 2015 Loss to which the Plaintiffs were entitled under the 2015-2016 Policy.

70.     The failure of Defendant to provide payment to the Plaintiffs for the 2015 Loss as required by the 2015-2016 Policy was done in bad faith.

71.     Defendant is thus liable to Plaintiffs, pursuant to O.C.G.A. § 33-4-6, in addition to payment for the 2015 Loss, for a sum equal to 50% of the liability of Defendant plus reasonable attorney's fees.

## **COUNT III – BREACH OF CONTRACT (2016 LOSS)**

72.     Plaintiffs incorporate and allege by reference paragraphs 1-71 above as if the same were stated herein verbatim.

73.     The 2015-2016 Policy constitutes a contract between Plaintiffs and Defendant.

74.     The 2016 Loss sustained by the Plaintiffs was a Covered Cause of Loss to Covered Property under the terms and conditions of the 2015-2016 Policy.

75.     Under the terms and conditions of the 2015-2016 Policy, Defendant was obligated to provide payment to the Plaintiffs for the full amount of Plaintiffs' covered damages arising out of the 2016 Loss.

76.     Defendant improperly and unreasonably failed to make payment to the Plaintiffs for the full amount of Plaintiffs' covered damages arising out of the 2016 Loss as required by the 2015-2016 Policy.

77.     Defendant's improper and unreasonable failure to provide payment to the Plaintiffs for the full amount of the Plaintiffs' covered damages arising out of the 2016 Loss constitutes a breach of contract.

78.     Plaintiffs have sustained damages in an amount to be proven at trial as a result of Defendant's breach alleged in Count III herein.

## COUNT IV – BAD FAITH (O.C.G.A. § 33-4-6) (2016 LOSS)

79.     Plaintiffs incorporate and allege by reference paragraphs 1-78 above as if the same were stated herein verbatim.

80.     Plaintiffs made a demand for payment of the 2016 Loss pursuant to O.C.G.A. § 33-4-6 on May 21, 2019.

81.     Defendant unreasonably and frivolously failed to provide payment to the Plaintiffs for the full amount of Plaintiffs' covered damages arising out of the 2016 Loss to which the Plaintiffs were entitled under the 2015-2016 Policy.

82.     The failure of Defendant to provide payment to the Plaintiffs for the full amount of Plaintiffs' covered damages arising out of the 2016 Loss as required by the 2015-2016 Policy was done in bad faith.

83.     Defendant is thus liable to Plaintiffs, pursuant to O.C.G.A. § 33-4-6, in addition to supplemental payment for the 2016 Loss, for a sum equal to 50% of the liability of Defendant plus reasonable attorney's fees.

## COUNT V – BREACH OF CONTRACT (2017 LOSS)

84.     Plaintiffs incorporate and allege by reference paragraphs 1-83 above as if the same were stated herein verbatim.

85.     The 2016-2017 Policy constitutes a contract between Plaintiffs and Defendant.

86.     The 2017 Loss sustained by the Plaintiffs was a Covered Cause of Loss to Covered Property under the terms and conditions of the 2016-2017 Policy.

87.     Under the terms and conditions of the 2016-2017 Policy, Defendant was obligated to provide payment to the Plaintiffs for the covered damages arising out of the 2017 Loss.

88.     Defendant improperly and unreasonably failed to make any payment to the Plaintiffs for the full amount of covered damages caused by the 2017 Loss as required by the 2016-2017 Policy.

89.     Defendant's improper and unreasonable failure to provide payment to the Plaintiffs for the full amount of covered damages caused by the 2017 Loss constitutes a breach of contract.

90.     Plaintiffs have sustained damages in an amount to be proven at trial as a result of Defendant's breach alleged in Count VII herein.

## COUNT VI – BAD FAITH (O.C.G.A. § 33-4-6) (2017 LOSS)

91.     Plaintiff incorporates and alleges by reference paragraphs 1-90 above as if the same were stated herein verbatim.

92.     Plaintiffs made a demand for payment of the 2017 Loss pursuant to O.C.G.A. § 33-4-6 on May 21, 2019.

93.     Defendant unreasonably and frivolously failed to provide payment to the Plaintiffs for the full amount of covered damages caused by the 2017 Loss to which the Plaintiffs were entitled under the 2016-2017 Policy.

94.     The failure of Defendant to provide payment to the Plaintiffs for the full amount of covered damages caused by the 2017 Loss as required by the 2016-2017 Policy was done in bad faith.

95.     Defendant is thus liable to Plaintiffs, pursuant to O.C.G.A. § 33-4-6, in addition to payment for the 2017 Loss, for a sum equal to 50% of the liability of Defendant plus reasonable attorney's fees.

## COUNT VII – BREACH OF CONTRACT (2018 LOSS)

96.     Plaintiffs incorporate and allege by reference paragraphs 1-95 above as if the same were stated herein verbatim.

97.    The 2017-2018 Policy constitutes a contract between Plaintiffs and Defendant.

98.    The 2018 Loss sustained by the Plaintiffs was a Covered Cause of Loss to Covered Property under the terms and conditions of the 2017-2018 Policy.

99.    Under the terms and conditions of the 2017-2018 Policy, Defendant was obligated to provide payment to the Plaintiffs for the covered damages arising out of the 2018 Loss.

100.    Defendant improperly and unreasonably failed to make payment to the Plaintiffs for the 2018 Loss as required by the 2017-2018 Policy.

101.    Defendant's improper and unreasonable failure to provide payment to the Plaintiffs for the 2018 Loss constitutes a breach of contract.

102.    Plaintiffs have sustained damages in an amount to be proven at trial as a result of Defendant's breach alleged in Count IX herein.

## COUNT VIII – BAD FAITH (O.C.G.A. § 33-4-6) (2018 LOSS)

103.    Plaintiffs incorporate and allege by reference paragraphs 1-102 above as if the same were stated herein verbatim.

104.    Plaintiffs made a demand for payment of the 2018 Loss pursuant to O.C.G.A. § 33-4-6 on May 21, 2019.

105.    Defendant unreasonably and frivolously failed to provide payment to the Plaintiffs for the 2018 Loss to which the Plaintiffs were entitled under the 2017-2018 Policy.

106.    The failure of Defendant to provide payment to the Plaintiffs for the 2018 Loss as required by the 2017-2018 Policy was done in bad faith.

107.    Defendant is thus liable to Plaintiffs, pursuant to O.C.G.A. § 33-4-6, in addition to payment for the 2018 Loss, for a sum equal to 50% of the liability of Defendant plus reasonable attorney's fees.

## COUNT IX – RECOVERY OF INTEREST UPON DAMAGES (O.C.G.A. § 13-6-13)

108.    Plaintiffs incorporate and allege by reference paragraphs 1-107 above as if the same were stated herein verbatim.

109.    Pursuant to O.C.G.A. § 13-6-13, Plaintiffs are entitled to, and Defendant is liable for, interest upon Plaintiffs' damages sustained as a result of Defendant's breaches alleged herein.

**WHEREFORE**, Plaintiffs pray:

a.    That process issue according to law;

b.    That Defendant be served with a copy of Plaintiffs' Second Amended Complaint and Demand for Trial by Jury according to law;

c.    That Plaintiffs be granted a **trial by jury** in this matter;

d.     That judgment be entered in favor of Plaintiffs against the Defendant for damages sustained as a result of Defendant's breaches of contract alleged herein in an amount to be determined by the enlightened conscience of an impartial jury;

e.     That judgment be entered in favor of Plaintiffs against the Defendant for bad faith damages pursuant to O.C.G.A. § 33-4-6;

f.     The judgment be entered in favor of Plaintiffs against the Defendant for interest upon the Plaintiffs' damages pursuant to O.C.G.A. § 13-6-13; and

g.     That Plaintiffs have such further relief as the Court deems necessary and proper.

**PLAINTIFFS HEREBY DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 26th day of February, 2023.

**MORGAN & MORGAN**

*/s/ Max Compton*

_____

William M. Compton
Attorney for Plaintiffs
Georgia Bar No. 380092

200 Stephenson Ave., Suite 200
Savannah, Georgia 31405
(912) 443-1017 - Direct
(912) 443-1184 – Facsimile
MCompton@forthepeople.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 26, 2024 I electronically filed

**PLAINTIFFS' THIRD AMENDED COMPLAINT** with the Clerk of Court via

the CM/ECF system, which will send notification to the following counsel:

Philip W. Savrin
Freeman Mathis & Gary, LLP
100 Galleria Parkway
Suite 1600
Atlanta, GA 30339-5948

**MORGAN & MORGAN**

*/s/ Max Compton*
William Maxwell Compton
Attorney for Plaintiffs
GA Bar No: 380092

200 Stephenson Ave., Suite 200
Savannah, Georgia 31405
(912) 443-1017 - Direct
(912) 443-1184 – Facsimile
MCompton@forthepeople.com